UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GIDEON ORUNABOKA WILSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13CV1959 JAR |
| | ) | |
| JEH CHARLES JOHNSON, Secretary, U.S. | ) | |
| Department of Homeland Security, et al.,[1] | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Respondents' Motion to Dismiss or, In the Alternative, Motion for Summary Judgment ("Motion"; ECF No. 4). This Court allowed Petitioner to conduct discovery in order to respond to Respondents' Motion. (ECF No. 11). The matter is now fully briefed and ready for disposition.

## BACKGROUND

On August 24, 2009, Petitioner Gideon Wilson's sister, Boma Wilson Orunaboka, a Nigerian citizen with Lawful Permanent Residence (LPR) in the United States at the time, appeared at the United States Citizenship and Immigration Services ("USCIS") to interview as part of Ms. Orunaboka's naturalization application. (Respondents' Statement of Uncontroverted Material Facts ("RSUMF"), ECF No. 6, ¶1). On August 24, 2009, Dwight Holley, a United States Citizen, also appeared at USCIS with Ms. Orunaboka as her alleged spouse. (RSUMF, ¶2). Ms. Orunaboka and Mr. Holley were not married at the time of their August 24, 2009 interviews

---

[1] Jeh Charles Johnson became the Commissioner of Social Security on December 23, 2014 and Leon Rodriguez became the Director of United States Citizenship and Immigration Services (USICS) on July 9, 2014. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Jeh Charles Johnson is substituted for Rand Beers and Leon Rodriguez is substituted for Alejandro Mayorkas.

1

because they had divorced on March 26, 2009. (RSUMF, ¶3). During his USCIS interview on August 24, 2009, Mr. Holley confessed verbally and in writing that his marriage to Ms. Orunaboka was a sham undertaken for the fraudulent basis of assisting Ms. Orunaboka to enter the United States so that she could obtain lawful status and U.S. citizenship thereafter. (RSUMF, ¶5). During that interview, Mr. Holley wrote that he "worked with Gideon," that he "was asked to marry Boma, they would pay for a passport, and pay me some cash." (RSUMF, ¶6; Petitioner's Statement of Additional Materials Facts in Dispute ("PSUMF"), ECF No. 12, ¶¶6, 52). Also, during Mr. Holley's USCIS interview on August 24, 2009, Mr. Holley stated that he married Ms. Orunaboka to assist her in entering the United States and obtaining citizenship. (RSUMF, ¶7). Mr. Holley stated that he received $1,500.00, purportedly in exchange for marrying Petitioner's sister. (RSUMF, ¶8). Mr. Holley stated that Petitioner paid for Holley's passport and travel to Nigeria to facilitate Holley's marriage to Petitioner's sister. (RSUMF, ¶9).

On July 27, 2012, USCIS conducted Petitioner's first naturalization interview. (RSUMF, ¶10). Petitioner's naturalization interview was conducted by Ms. Geraldine Frison, an Immigration Services Officer II for the USCIS. (PSUMF, ¶22). During his naturalization interview, Petitioner verbally reiterated his previous written answer that he had not ever helped anyone enter or try to enter the United States illegally. (RSUMF, ¶11). Also during Petitioner's naturalization interview, Petitioner orally confirmed his prior written response that he had never given false or misleading information to any United States Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal. (RSUMF, ¶13). Petitioner also orally confirmed his previous written response that he had never committed a crime or offense for which he was not arrested. (RSUMF, ¶15).

On September 25, 2012, USCIS conducted a second interview in conjunction with Petitioner's naturalization application. (RSUMF, ¶17). During the interview, the USCIS

interviewer asked Petitioner about his addresses of residence and the dates he lived at them and with whom. (RSUMF, ¶18).

On or around October 1, 2012, USCIS issued its decision denying Petitioner's naturalization application based upon a finding of lack of good moral character. (RSUMF, ¶19). On October 30, 2012, Petitioner filed with the USCIS a Form N-336, Request for Hearing on a Decision in Naturalization Proceedings, which constitutes an administrative appeal of the naturalization denial decision. (RSUMF, ¶20). USCIC held a hearing on January 28, 2013. (RSUMF, ¶20). On August 5, 2013, USCIS affirmed its October 1, 2012 denial of Petitioner's naturalization application. (RSUMF, ¶21).

## STANDARDS OF REVIEW

### A. Motion to Dismiss

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to the plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

**B. Motion for Summary Judgment**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

4

## C. Naturalization Standard of Review

"An applicant for naturalization 'bear[s] the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization.'" Nyari v. Napolitano, 562 F.3d 916, 919 (8th Cir. 2009)(quoting 8 C.F.R. § 316.2(b)); see also Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637 (1967). "Any doubts about eligibility should be resolved in favor of the United States and against the applicant." Ghanim v. Napolitano, 4:12CV1818SNLJ, 2013 WL 4401837, at *3 (E.D. Mo. Aug. 14, 2013)(citing Berenyi, 385 U.S. at 637). Under 8 U.S.C. § 1427(a), an applicant for naturalization must meet the following requirements:

> No person ... shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years ..., (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

"Good moral character is evaluated on a case-by-case basis, taking into account the 'standards of the average citizen in the community of residence.'" Ghanim, 2013 WL 4401837, at *3 (quoting 8 C.F.R. § 316.10(a)(2)); Hamed v. Beers, 4:13CV00516 HEA, 2013 WL 6096511, at *2 (E.D. Mo. Nov. 20, 2013)(quoting 8 C.F.R. § 316.10(a)(2))("Good moral character is determined by taking into account the 'standards of the average citizen in the community of residence.'"); Abdi v. U.S. Citizenship & Immigration Servs., 923 F. Supp. 2d 1160, 1164-65 (D. Minn. 2013)(citing 8 U.S.C. § 1427(a); 8 C.F.R. § 316.10(a)(1)(an applicant "must show that he was 'a person of good moral character' during the five-year 'look back' period immediately preceding his application")). The provision of false testimony by a naturalization applicant for the purpose of obtaining any immigration benefit renders the applicant statutorily ineligible for naturalization as a person lacking good moral character. 8 U.S.C. §§1101(f)(6), 1427(a)(3). The regulations explicitly list

5

both the provision of false testimony to obtain an immigration benefit and the commission of unlawful acts adversely reflecting upon an applicant's moral character as grounds to find moral character lacking. 8 C.F.R. §316.10(b)(2)(vi), (3)(iii).

After the USCIS denies a naturalization application and an administrative appeal, an applicant can seek judicial review in district court. See 8 U.S.C. §1421(c)("A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court for the district in which such person resides[.]"). The Court's review is *de novo*, with the Court making its own findings of fact and conclusions of law. Id.; Nyari v. Napolitano, 562 F.3d 916, 920 (8th Cir. 2009); 8 U.S.C. § 1421(c)("[A]t the request of the petitioner, the Court shall conduct a hearing *de novo* on the application."). The Federal Rules of Civil Procedure govern proceedings under 8 U.S.C. §1421(c). See Nyari v. Napolitano, 562 F.3d 916, 922 (8th Cir. 2009) (applying the federal rules for summary judgment); Fed.R.Civ.P. 81(a)(3)("These rules apply to proceedings for admission to citizenship to the extent that the practice in those proceedings is not specified in federal statutes and has previously conformed to the practice in civil actions."); Chan v. Gantner, 464 F.3d 289, 295 (2d Cir. 2006).

## DISCUSSION

### I. Motion to Dismiss

Respondents assert that Petitioner provided false testimony that shows that he lacks the good moral character required to naturalize. (ECF No. 5 at 9). As such, Respondents maintain that Petitioner is statutorily ineligible for naturalization under 8 U.S.C. §§1427(a)(3), 1101(f)(6), and fails to state a claim for relief. (ECF No. 5 at 9). Although normally a court cannot look outside the pleadings on a Rule 12(b)(6) motion to dismiss, Respondents state that the exhibits attached to the Motion to Dismiss are either referenced in the Petition or are matters of the public

6

or administrative record. See Deerbrook Pavilion, LLC v. Shalala, 235 F.3d 1100, 1102 (8th Cir. 2000)("On a motion to dismiss, a court must primarily consider the allegations contained in the complaint, although matters of public and administrative record referenced in the complaint may also be taken into account."); see also 8 U.S.C. §1421(c).

In response, Petitioner notes that 8 U.S.C. §1421(c) provides that an LPR whose N-400 naturalization application is denied has a statutory right to come to federal court and request a *de novo* review of his application. (ECF No. 13 at 13). Petitioner claims that Respondents are asking the Court to look at factual matters outside the pleadings and that he has adequately pleaded a 1421(c) Petition for *de novo* review. (ECF No. 13 at 13-14).

The Court agrees that Petitioner has adequately stated a claim for *de novo* review under 8 U.S.C. §1421(c). Accordingly, the Court cannot make a decision based purely upon the administrative record in which credibility determinations were made. Because the Court must accept all of the allegations in the Complaint as true and perform a *de novo* review of Petitioner's application, the Court denies Respondents' motion to dismiss. See Chan v. Gantner, 464 F.3d 289, 291 (2d Cir. 2006) ("[j]udicial review of naturalization denials is always available and is *de novo,* and is not limited to any administrative record, but rather may be on facts established in and found by the district court"); United States v. Hovsepian, 359 F.3d 1144, 1162 (9th Cir. 2004) (stating that "even if the INS is allowed to make the initial decision on a naturalization application, the district court has the final word and does not defer to any of the INS's findings or conclusions").

## II. Motion for Summary Judgment

### A. False Testimony

On October 1, 2012, USCIS denied Petitioner's naturalization application for lack of good moral character. As the first ground for entry of summary judgment, Respondents claim that

7

Petitioner's false testimony shows he lacks good moral character necessary to naturalize. USCIS based its denial on the testimony provided by Petitioner during his naturalization interview on July 27, 2012. Respondents point to three different instances where Petitioner allegedly lied during his interview. The USCIS interviewer asked Petitioner to orally confirm the answers to the following questions asked on the naturalization application: (1) that he had "[n]ever...[h]elped anyone enter or try to enter the United States illegally"; (2) that he had "[n]ever given false or misleading information to any United States Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal"; and (3) that he had "[n]ever committed a crime or offense for which [he was] not arrested." Petitioner verbally confirmed that he had never done any of those things. Respondents claim that all of these answers are false because Petitioner fraudulently helped his sister, Boma Wilson Orunaboka, enter the United States as an immigrant and fraudulently obtain United States citizenship. (ECF No. 5 at 10-11). Respondents maintain that Petitioner gave false information to a United States government official by swearing at his naturalization interview that he had never acted in such a manner. Finally, Respondents assert that Petitioner committed the crimes of conspiracy to commit marriage fraud to defraud the United States and aiding and abetting a foreign national and a United States citizen to enter into a fraudulent marriage, but Petitioner falsely swore at his naturalization interview that he had never committed any crimes for which he was not arrested. (ECF No. 5 at 11). Based upon all of these allegedly false answers, Respondents contend that Petitioner lacks the good moral character to naturalize and the Court should grant the Government's motion for summary judgment. Respondents further argue that Mr. Holley's sworn videotaped confessional interview coupled with the check marks Officer Frison made as Petitioner verbally reaffirmed his written responses during his naturalization interview support both USCIS's finding that Petitioner lacks the requisite

8

good moral character to naturalize and Respondents' dispositive motion supporting the agency's naturalization denial. (ECF No. 14 at 7).

In response, Petitioner claims that Mr. Holley's handwritten statement is "rank hearsay" and is inadmissible for purposes of summary judgment. (ECF No. 13 at 15-16). Petitioner claims that Respondents' Motion for Summary Judgment is based purely upon the testimony of Mr. Holley, which is contradicted by Petitioner and his sister, Ms. Orunaboka. (ECF No. 13 at 16). Petitioner maintains that the Court should not make a credibility determination and grant summary judgment in favor of Respondents based solely upon Mr. Holley's testimony. Petitioner notes in particular that the USCIS examiner, Officer Frison, found no indications of fraud when she interviewed Ms. Orunaboka, but she discovered several instances where Mr. Holley lied, including the names of his children. (Id.). Petitioner also asserts that denying him a hearing and the opportunity to cross-examine Mr. Holley would violate Petitioner's Due Process rights. (ECF No. 13 at 16-19)(citing Ching v. Mayorkas, 725 F.3d 1149, 1156 (9th Cir. 2013)(holding that the petitioners' due process rights were violated when a "signed statement was accepted as true without affording the plaintiffs the opportunity for cross-examination, and in the face of contradictory documents and affidavits")). Petitioner points out that Mr. Holley's statement originally stated "All of this was not true" but that was crossed out to state "All of this is true." (PSUMF, ¶¶56-57). At some point in time, Mr. Holley wrote a statement stating, "I confess to lying about all this[.] it[']s not true." (PSUMF, ¶59).[2] Petitioner claims that he should have the opportunity to cross-examine Holley about his allegations and his motivation for retribution against his ex-wife and her brother, Petitioner. (ECF No. 13 at 18-19).

---

[2] Respondents, however, contend that Mr. Holley can be seen writing these statements during his sworn videotaped confession. (ECF No. 14 at 4). Respondents claim that the video shows that Mr. Holley realized that the interviewer caught him lying and Holley then confessed to lying and followed his confession with a written explanation of his agreement to the fraudulent marriage. (Id.).

9

The Court finds that Mr. Holley's statement may be admissible because it was made under oath[3] and because Mr. Holley's statement was against his own interest; Mr. Holley's admission could make him subject to prosecution for conspiracy to commit marriage fraud to defraud the United States. See 8 U.S.C. §1325(c). However, it is well established that courts should neither weigh evidence nor make credibility determinations when ruling on a motion for summary judgment. Nyari v. Napolitano, 562 F.3d 916, 922 (8th Cir. 2009)(in the context of a 8 U.S.C. §1421 review). Even though Mr. Holley's credibility may be bolstered by the fact that his statements were against interest, the Court nevertheless cannot make a credibility determination at the summary judgment stage. Petitioner noted that Mr. Holley may have been motivated by retribution to lie about his former marriage to punish his ex-wife and her brother. Mr. Holley's credibility has also been proven suspect. Mr. Holley gave the USCIS officer, Ms. Frison, different accounts of his relationship with Petitioner's sister and he inexplicably lied about the names of his children, which was easily proven false. See ECF No. 14 at 4 (stating that Mr. Holley lied during his USCIS interview and followed his confession with an explanation of his agreement to the sham marriage with Petitioner's sister and payment in return); ECF No. 13 at 11, 19 (Mr. Holley provided false names for his children and brought a Thanksgiving photograph to his immigration interview and admitted taking it just for immigration purposes).

Based upon the contradictory testimony provided by Mr. Holley and Petitioner, the Court is unable to determine whether the marriage between Mr. Holley and Ms. Orunaboka was legitimate or part of a fraudulent scheme in which Petitioner was involved. The Court notes that the credibility of USCIS's conclusions may be undermined by inaccurate testimony given by Mr.

---

[3] Although Petitioner argues that Mr. Holley's statement is not notarized and it does not state that it is being made under penalty of perjury or that it is under oath (ECF No. 13 at 8), Mr. Holley's entire interview was under oath. (ECF No. 14 at 4 (noting Mr. Holley's sworn videotaped confession)).

10

Holley, who indisputably provided false testimony regarding the names of his children. Given that Mr. Holley's testimony is the only testimony upon which Respondents based Petitioner's denial of naturalization, the Court finds that an issue of material fact exists as to whether Petitioner provided false testimony to Ms. Frison. Under these circumstances, the Court is unable to determine as a matter of law whether Petitioner lied about his involvement in Mr. Holley's and Ms. Orunaboka's failed nuptials. Nesari v. Taylor, 806 F. Supp. 2d 848, 864 (E.D. Va. 2011). The Court, therefore, denies Respondents' motion for summary judgment at this time.

B. Unlawful Acts

Similarly, Respondents also contend that Petitioner cannot state a claim for relief because he lacks the requisite good moral character to naturalize due to two crimes he committed but of which he has not been convicted. (ECF No. 5 at 12-13). These crimes include conspiracy to commit marriage fraud to defraud the United States, in violation of 8 U.S.C. §1325(c), 18 U.S.C. §371, and aiding and abetting a foreign national and a United States citizen in the act of entering into a fraudulent marriage for purposes of evading immigration laws, in violation of 8 U.S.C. §1325(c), 18 U.S.C. §2(a). Respondents state that Petitioner conspired to commit marriage fraud to defraud the United States, in violation of 8 U.S.C. §1325(c), 18 U.S.C. §371, when Petitioner entered into an agreement with Mr. Holley that allowed Ms. Orunaboka to enter the United States based upon Ms. Orunaboka's sham marriage to Mr. Holley, a U.S. citizen. (ECF No. 5 at 14). Additionally, Respondents contend that Petitioner aided and abetted the act of entering into a fraudulent marriage for purposes of evading immigration laws, in violation of 8 U.S.C. §1325(c), 18 U.S.C. §2(a), when he made arrangements with Mr. Holley for the sham marriage to Ms. Orunaboka, paying Holley a $1,500.00 fee for the marriage, and paying for Mr. Holley's passport and travel expenses to Nigeria for the marriage. (ECF No. 5 at 14). Respondents again emphasize that it is the commission of these crimes, and not any conviction, that demonstrates that

11

Petitioner lacks the requisite moral character to naturalize. See 8 C.F.R. §§316.10(b)(2)(ii), (b)(3)(iii).

For the same reasons as above, the Court denies Respondents' Motion for Summary Judgment on this basis as well. At this point, contradictory testimony exists regarding whether Petitioner arranged a fraudulent marriage between Mr. Holley and Ms. Orunaboka. Respondents' motion relies solely upon the testimony of Mr. Holley. The Court cannot grant summary judgment based upon the credibility finding by USCIS officer Ms. Frison.

### III. Equal Access to Justice Act Fees

In closing, Petitioner asks the Court for his attorney's fees under the Equal Access to Justice Act for having to respond to Respondents' "frivolous" motion for summary judgment. (ECF No. 13 at 20). Given that Respondents' Motion for Summary Judgment is supported by the confession of Mr. Holley, the Court does not believe that their motion was frivolous. Further, the mere denial of Respondents' Motion for Summary Judgment does not constitute a final disposition of this case. "Because there has been no final judgment in this action, this request is premature." Sohappy v. Hodel, 911 F.2d 1312, 1321 (9th Cir. 1990).

### IV. Discovery

At the close of Respondents' Reply brief, they ask the Court to allow them the opportunity to conduct discovery if the Court denies their Motions to Dismiss and for Summary Judgment. The Court will afford Respondents sixty (60) days from this date to conduct discovery in anticipation of a hearing on Petitioner's Petition on December 12, 2014 at 9:00 a.m.

Accordingly,

**IT IS HEREBY ORDERED** that Respondents' Motion to Dismiss or, In the Alternative, Motion for Summary Judgment [4] is **DENIED**.

**IT IS FURTHER ORDERED** that Respondents shall have sixty (60) days from the date of this Memorandum and Order to conduct discovery.

**IT IS FINALLY ORDERED** that a hearing on Petitioner's Petition shall be held on **December 12, 2014** at **9:00 a.m.**

Dated this 17th day of September, 2014.

                                                  /s/ John A. Ross
                                                  JOHN A. ROSS
                                                  UNITED STATES DISTRICT JUDGE